

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| THE UNIVERSITY OF TEXAS AT EL PASO, | § | No. 08-14-00314-CV |
|  | § | Appeal from |
| Appellant, | § | County Court at Law No. 3 |
| v. | § | of El Paso County, Texas |
| DIANA RUIZ ESPARZA, | § | (TC # 2013-DCV-4283) |
| Appellee. | § |  |

**O P I N I O N**

In a prior appeal before this court involving the same parties, we considered Diana Esparza's claims that the University of Texas at El Paso (UTEP): (i) discriminated against her based on age, national origin, and gender; (ii) subjected her to a hostile work environment; and (iii) retaliated against her for filing a charge of discrimination. *Esparza v. University of Texas at El Paso*, 471 S.W.3d 903 (Tex.App.--El Paso 2015, no pet.). All of the claims at issue in the prior appeal arose from alleged actions that took place while she was still employed as a staff interior designer for UTEP. *Id.* In this case, we consider whether a different trial court, in a different lawsuit, should have granted a plea to the jurisdiction for claims relating to her termination from that job. For the reasons noted below, we affirm in part and reverse in part the denial of UTEP's plea to the jurisdiction.

# FACTUAL SUMMARY

As we outlined in our previous opinion, Diana Esparza worked for UTEP as a staff designer. *Id.* Beginning at least by 2008 her employment tenure was marked with difficulties, as evidenced by several written warnings and suspensions. Those difficulties resulted in two prior lawsuits: a 2010 lawsuit filed in federal court with claims under the federal Equal Pay Act, and a 2012 lawsuit filed in state court under the Texas Commission of Human Rights Act (TCHRA). TEX.LAB.CODE ANN. §§ 21.051, 21.055 (West 2015). The relevant events from those prior cases, and the events leading to the third lawsuit which is now before us, are as follows:

- November 19, 2010. The United States District Court for the Western District of Texas dismissed Esparza's 2010 Equal Pay Act lawsuit against UTEP because she could not identify any male employees who were paid more but who did the same job, requiring equal skill, effort, and responsibilities under similar working conditions.

- February 21 2012. Esparza filed her original petition in the 210th District Court against UTEP alleging that she was paid less than male employees in her department; she was given warnings or suspensions because of her age, sex, or national origin; she was exposed to a hostile work environment; and she was retaliated against in violation of TCHRA.

- July 17, 2013. The 210th District Court signed its final judgment of dismissal as to the TCHRA lawsuit based on UTEP's plea to the jurisdiction.

- August 14, 2013. Esparza filed her notice of appeal from the 210th District Court's final judgment.

- September 10, 2013. Esparza received a notice of UTEP's intent to terminate her employment and she was placed on indefinite administrative leave by her department head. The stated reason for the proposed termination was poor job performance.

- September 18, 2013. Esparza filed a charge of discrimination contending she was placed on indefinite administration leave based on her national origin, and in retaliation for her having filed a previous charge of discrimination.

- September 20, 2013. Esparza's employment with UTEP was terminated.

2

- October 28, 2013. Esparza filed a charge of discrimination contending she was placed on indefinite leave and then terminated based on her national origin, and in retaliation for having filed a previous charge of discrimination.

- November 22, 2013. In an internal appeals hearing from her termination, Esparza claimed UTEP's hearing officer denied her the ability to present evidence and call witnesses, while giving that right to UTEP.

- February 20, 2014. Esparza filed another charge of discrimination based on sex, national origin, age, and retaliation. It contended she was denied the opportunity to "present witnesses [and] evidence that my termination was in retaliation for my prior EEO activity." She specifically claimed the hearing officer's actions were in retaliation for her filing the 2010 and 2013 charges of discrimination.

Esparza filed her present lawsuit on November 18, 2013, in County Court at Law Number Three. This case complained only of her termination from UTEP, including the post-termination hearing. Her first amended petition alleged national origin discrimination under Count One, age discrimination under Count Two, and retaliation under Count Three.

UTEP filed a plea to the jurisdiction which was amended once.[1] The amended plea attached jurisdictional evidence including some of the live pleadings and the final judgments from the two prior lawsuits. It also attached Esparza's deposition taken in the federal lawsuit, and the various charges of discrimination that she filed. The plea contended that Counts One and Two (the age and national origin claims) failed as matter of law because the existence of comparable employees, essential to her claim, was resolved against her in the two prior lawsuits. The plea also contended that Esparza failed to plead any facts establishing a prima facie retaliation or discrimination claim. UTEP further contended that the retaliation claim would fail in any event based on the amount of time between the termination and the date of the protected activity.

---

[1] The original plea to the jurisdiction claimed that Esparza failed to exhaust her administrative remedies because she filed suit before obtaining a right to sue letter from the Texas Workforce Commission. Based on that contention, the suit was abated for a time, after which UTEP filed its amended plea to the jurisdiction omitting the exhaustion claim, and raising the arguments now before us.

3

The trial court denied the plea without explanation. UTEP appeals that ruling in three issues for review. Issue One contends that Esparza's claims are collaterally estopped because the two previous lawsuits established that she has no similarly-situated employees, thus she cannot establish a prima facie TCHRA case. Issue Two alleges that Esparza did not plead facts to establish her TCHRA claims. Finally, Issue Three complains that Esparza did not establish a prima facie case of retaliation because she failed to establish a causal connection between the actions of which she now complains and her protected activities.

**PLEAS TO THE JURISDICTION IN TCHRA CLAIMS**

Governmental entities such as UTEP are generally immune from suit. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). However, the Legislature has waived immunity for claims properly brought under TCHRA. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). That waiver extends only to "those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Garcia*, 372 S.W.3d at 636. Absent a pleading making out a prima facie case, the State's immunity from suit has not been waived. *Id*.

A governmental entity may challenge the existence of that prima facie case through a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26; *Univ. of Texas at El Paso v. Ochoa*, 410 S.W.3d 327, 330 (Tex.App.--El Paso 2013, pet. denied). The plea might attack the face of the pleading, but it may also include jurisdictional evidence which thereby place into issue the existence of a jurisdictional fact. *Miranda*, 133 S.W.3d at 226-27; *College of the Mainland v. Glover*, 436 S.W.3d 384, 391 (Tex.App.--Houston [14th Dist.] 2014, pet. denied).

4

When a plea to the jurisdiction challenges the pleading itself, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* We accept the allegations in the pleadings as true and construe them in the plaintiff's favor. *Miranda*, 133 S.W.3d at 226-27; *Mayfield v. Tarrant Regional Water Dist.*, 467 S.W.3d 706, 715 (Tex.App.--El Paso 2015, no pet.). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but also do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). In that instance, the plaintiff should be afforded the opportunity to amend. *Id.* However, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction can be granted without allowing an opportunity to amend. *Id.*; *Mayfield*, 467 S.W.3d at 715.

"However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 227. "If there is no question of fact as to the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). "If, however, the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder." *Id.* "This standard mirrors our review of summary judgments" where the reviewing court takes as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Id.*

## Wrongful Termination and Issue Preclusion

Counts One and Two of the petition alleged that Esparza was terminated because of either her age, or national origin. UTEP contends that the undisputed jurisdictional evidence demonstrates that she could never prove either of those contentions because she had no similarly situated comparable employees upon which to base her claim. The jurisdictional evidence before the trial court consisted of the final judgments from the federal Equal Pay Act suit and the TCHRA suit in the 210th District Court. The federal Equal Pay Act judgment was expressly based on the lack of comparable employees. We earlier affirmed the dismissal of a disparate pay claim in the TCHRA suit based on the lack of comparable male co-workers. *Esparza*, 471 S.W.3d at 911.

Issue preclusion (also termed collateral estoppel), precludes a party from re-litigating an issue that it previously litigated and lost. *Quinney Elec., Inc. v. Kondos Entertainment, Inc.*, 988 S.W.2d 212, 213 (Tex. 1999), *citing Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The proponent of a collateral estoppel defense must establish that: (1) the issue decided in the first action was actually litigated, (2) was essential to that lawsuit's judgment, and (3) is identical to the issue in the pending action. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex. 1998); *Getty Oil v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992). Whether issue preclusion applies is a question of law for the court to decide. *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 138 (Tex.App.--El Paso 1997, writ denied); *Price v. Texas Employers' Ins. Ass'n*, 782 S.W.2d 938, 940 (Tex.App.--Tyler 1989, no pet.); *Martin v. U.S. Trust Co. of New York*, 690 S.W.2d 300, 307 (Tex.App.--Dallas 1985, writ ref'd n.r.e.).[2]

---

[2] Both claim preclusion and issue preclusion are affirmative defenses, and the party asserting either defense carries the burden of pleading and proving their elements. *Calabrian Corp. v. Alliance Specialty Chemicals, Inc.*, 418

Esparza maintains that the prior suits involve different claims--one for equal pay and the other for discriminatory actions while she was still employed. However, issue preclusion may bar re-litigation of issues previously litigated even though the subsequent suit is based upon a different cause of action. *See Johnson & Higgins*, 962 S.W.2d at 521, *citing Wilhite v. Adams*, 640 S.W.2d 875 (Tex. 1982). If the cause of action in the second lawsuit involves an element already decided in the first lawsuit, that cause of action is barred. *See Johnson & Higgins*, 962 S.W.2d at 519. For this to be true, however, the issue decided in the first action must be identical to the issue in the pending action. *Id.*

A TCHRA plaintiff can prove discrimination in one of two ways. *Garcia*, 372 S.W.3d at 634. "The first method, rather straightforward, involves proving discriminatory intent via direct evidence of what the defendant did and said." *Id.* But because direct evidence of discrimination is often "hard to come by" the court created a second method often termed "the burden-shifting mechanism of *McDonnell Douglas.*" *Id.*, *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination." *Id.* In a disparate treatment case, for instance, the employee must show she (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) others similarly situated were

---

S.W.3d 154, 158 (Tex.App.--Houston [14th Dist.] 2013, no pet.). We assume without deciding that jurisdictional evidence establishing the affirmative defense of claim preclusion might properly be included in a plea to the jurisdiction. Esparza has not challenged this assumption and neither party has briefed the question, which we note is not a foregone conclusion. *Cf. Moore v. University of Houston-Clear Lake*, 165 S.W.3d 97, 103 (Tex.App.-- Houston [14th Dist.] 2005, no pet.)(defendant cannot challenge the timeliness of a plaintiff's suit under the Whistleblower Act in a plea to the jurisdiction); *City of New Braunfels v. Allen*, 132 S.W.3d 157, 166 (Tex.App.-- Austin 2004, no pet.)(same) *with Crockett County v. Klassen Energy, Inc.*, 463 S.W.3d 908, 911 (Tex.App.--El Paso 2015, no pet.)(government entity may properly bring a limitations or repose defense in a plea to the jurisdiction *if* the applicable statute clearly establishes that timely filing is a statutory prerequisite to suit); *Texas Bd. of Pardons & Paroles v. Feinblatt*, 82 S.W.3d 513, 519 (Tex.App.--Austin 2002, pet. denied)(failure to comply with grievance procedure was jurisdictional and could be raised in plea to the jurisdiction).

treated more favorably. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam).[3]  Neither party here disputes that Esparza is proceeding under this second approach, and neither party contests for the purposes of this appeal that she meets the first three elements:  she is in two protected classes (age and national origin), she was qualified for her position, and she was terminated.

Rather, UTEP contends through its proofs that Esparza will be precluded from claiming the existence of any similarly situated employees who were treated more favorably.  According to UTEP, both in the federal equal pay lawsuit, and in the earlier appeal before this court, the issue of similarly situated co-employees has already been adversely (and finally) decided against Esparza.  We disagree.

The federal suit claimed that Esparza was paid less than her male counterparts.  Under the Equal Pay Act, the plaintiff must identify employees of the opposite sex who were paid more, yet do the same job requiring "equal skill, effort, and responsibility . . . under similar working conditions."  29 U.S.C.A. § 206(d)(1)(West 1998)  The federal district court granted summary judgment because there was no evidence that the persons Esparza identified as her male counter-parts were in fact her counter-parts.  The federal court's opinion analyzed Esparza's job duties and compared it to each of the five male persons she had identified as comparators.  The court concluded that the male persons she identified had different jobs with different duties and responsibilities.

---

[3]  If she made that showing, the burden then shifts to UTEP to articulate a "legitimate, nondiscriminatory reason" for her discharge. *Quantum Chem.*, 47 S.W.3d at 477, *quoting McDonnell Douglas*, 411 U.S. at 802.  If UTEP did so, the presumption of discrimination created by the plaintiff's prima facie showing is eliminated, and the burden shifts back to Esparza to show UTEP's stated reason was a pretext for discrimination. *Id.*

Esparza's lawsuit in the 210th District Court also claimed she was paid less than the five identified male employees in her department. The suit further alleged that adverse employment actions in the nature of written warnings and suspensions were taken against her in 2008, 2009, and 2010. The pleading alleged that she was held to a stricter standard of performance and treated dissimilarly from others who were younger, or from a different national origin, or gender. We affirmed the dismissal of that suit in part, and reversed in part. As to the dismissal of her disparate pay claim, we upheld the dismissal because the male persons she identified did not have substantially the same job responsibilities. *Esparza*, 471 S.W.3d at 911. But we reversed the age, gender, and national origin claims regarding two unpaid leaves finding that they could be pled as adverse employment actions. *Id.* at 910.

The prior suits decided the issue of whether there were comparable *male* employees who were *paid* more that Esparza.[4] The present suit, however, includes the contention that there are comparable employees *under 40 years of age*, or of a *different national origin*, who were treated differently regarding a termination and post-termination hearing. The potential population of comparable employees in this lawsuit would focus not on pay or gender, but on termination, national origin, and age. Because the potential population of comparable employees is necessarily different, the issue resolved in the prior cases is not necessarily the same. For that reason, we overrule UTEP's Issue One.

### Failure to Plead a Viable Claim

UTEP also argued below that Esparza failed to plead a prima facie case for either her wrongful discharge or retaliation claims. Our analysis begins by dissecting Esparza's last amended petition. The substantive allegations start with a Statement of Facts section which

---

[4] As we noted in Esparza's earlier appeal, she contended the standard for comparable employees under the Equal Pay Act and TCHRA's disparate pay provision may differ. We again find no need to resolve this issue.

9

recited that Esparza was hired in 1999 and terminated in 2013.  It alleged she was given notice of UTEP's intent to terminate her, and she was placed on administrative leave; ten days later her employment was terminated.   The allegation identified three specific individuals who participated in the decision.   She was informed that the termination was due to poor job performance.   In an appeals hearing on November 22, 2013, she claimed the hearing officer would not allow her to present evidence or witnesses.  The Statement of Facts section then contains the bare statement that she was "discriminated against because of her gender, national origin (Mexican American), and retaliated against in violation of the Texas Commission on Human Rights Act."

The petition then asserted three counts alleging claims under national origin (Count One), age (Count Two) and retaliation (Count Three).  The structure of each count is identical.  An introductory sentence alleges that "the unlawful employment practices" occurred in the course of Esparza's employment with UTEP by un-named employees, agents, or servants of the University.  Each count then contains the following three sentences, substituting only the legal theory applicable to the count:

> Defendant's [sic] discriminated against Plaintiff herein because of national origin with respect to the terms, conditions, privileges, advantages and benefits of her employment with **UNIVERSITY OF TEXAS AT EL PASO** [sic] Specifically, Plaintiff was held to stricter standards of performance, and denied benefits of employment because of her national origin.  In addition, Plaintiff was treated dissimilarly because of her national origin.

The final sentences in each count alleged that Esparza was discriminated against as a proximate result of "these actions" and claimed she was required to retain an attorney to file her claim.  The three pleaded counts also incorporated by reference the "Statement of Facts" section into the allegations.  The petition tied itself to the charges of discrimination filed on October 28, 2013, and February 20, 2014.

10

Prior cases from the supreme court offer some guidance on a proper TCHRA pleading against a state entity. In *Miranda*, the court held that a plaintiff suing a state entity is required to plead facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226-27. The court tempered the requirement as being no more onerous than that required by TEX.R.CIV.P. 45 and 47 which require a short statement of the cause of action sufficient to give the opposing party fair notice of the claims involved. The majority opinion in *Miranda* expressly rejected the contention from one of the dissenting justices which would have required a more detailed recitation of the evidence establishing the asserted cause of action. *Miranda*, 133 S.W.3d at 230; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed2d 1 (2002)(rejecting heightened pleading standard in employment discrimination cases beyond that in the federal rules of civil procedure). Eight years later, in *Garcia*, the majority required a plaintiff's pleading to include the elements of the claim, to specifically include the *McDonnell Douglas* prima facie case when it applies. "While a plaintiff must plead the elements of her statutory cause of action--*here the basic facts that make up the prima facie case*--so that the court can determine whether she has sufficiently alleged a TCHRA violation, she will only be required to submit evidence if the defendant presents evidence negating one of those basic facts." [Emphasis added]. *Garcia*, 372 S.W.3d at 637. Additionally, a mere "superficial reference" to the TCHRA is insufficient to establish the State's consent to be sued. *Id.* at 637.

Applying these principles, we agree with UTEP that the last amended petition fails the fair notice test. The best indication of that failure is Esparza's multiple references in her appellate brief to this Court that the petition also included a gender discrimination claim when none of the three counts contained in the pleading below mention gender discrimination. The

only reference to gender discrimination is a single sentence in the Statement of Facts section that serially lists her claims, and includes the word "gender" along with national origin, age, and retaliation. If she is asserting a gender discrimination claim, the pleading failed to include the factual basis for the prima facie elements of that claim and at most is the kind of "superficial reference" to the TCHRA condemned in *Garcia*.

Even as to her age and national origin claim, we find a disconnect between the Statement of Facts section that references three specific events--her indefinite leave, the termination, and the post-termination hearing--and the allegations in her counts which in generic fashion refer to unlawful employment practices. The petition itself does not disclose whether she is proceeding based on direct evidence of discrimination (none is mentioned in Statement of Facts) or the *McDonnell Douglas* prima facie case (not all the elements of which are pled). It is unclear to us if this a "replacement case" where she would be required to plead that the person replacing her was younger or of a different race. *See Garcia*, 372 S.W3d at 642. Simply parroting the wording of the statute and incorporating by reference an unilluminating fact statement gives us no assurance that a prima facie case has in fact been pled.

But a case should not be dismissed for a pleading deficiency if it appears that an amended petition might resolve the error. *Esparza*, 471 S.W.3d at 910. The jurisdictional evidence in the record suggests some, but not all of the elements of her claim. She was terminated and falls into at least two suspect classifications. We are unsure whether she can plead the balance of the required elements, but neither are we convinced she could not do so. And should she be unable to plead the factual basis of her claims, the trial court can revisit the plea to the jurisdiction. We accordingly sustain Issue Two, and remand the case to the trial court to reconsider the state of the pleadings consistent with this opinion.

12

**Retaliation Claim**

For the retaliation claim, however, UTEP affirmatively argues that the jurisdictional evidence it submitted belies Esparza's ability to ever plead that claim. To establish a prima facie case for retaliation, Esparza must show: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) there is a causal connection between the protected activity and the adverse employment action. *San Antonio Water Sys.,* 461 S.W.3d at 137; *Mayfield v. Tarrant Regl. Water Dist.*, 467 S.W.3d 706, 714 (Tex.App.--El Paso 2015, no pet.); *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 376 (Tex.App.--Fort Worth 2006, no pet.). Protected activities include: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; and (4) testifying, assisting, or participating in any manner in an investigation, proceeding or hearing. TEX.LAB.CODE ANN. § 21.055. The causation element requires the plaintiff to establish a "but for" causal nexus between the protected activity and the employer's prohibited conduct. *University of Texas Southwestern Med. Ctr. v. Nassar*, __ U.S. __, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013)("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *McMillon v. Texas Dept. of Ins.*, 963 S.W.2d 935, 940 (Tex.App.--Austin 1998, no writ). UTEP's plea to the jurisdiction contends there is no causal connection between any of its actions and Esparza's protected activity because of the substantial lapse of time between the protected activity and the retaliatory act.

We discern two threads to Esparza's retaliation claim. The first alleged that her suspension on September 10, 2013, and then her termination ten days later, were in retaliation for her earlier protected activities. The second argued that a UTEP hearing officer in a post-termination proceeding denied her request to present witnesses and evidence in retaliation for her

earlier protected activity. UTEP suggests that the protected activity necessarily refers to her having filed and pursued her earlier discrimination charge and that it is too far removed in time to support any inference of retaliatory motive. It further argues the actions at the post-termination hearing cannot be considered because she had already been terminated by that time.

Retaliation claims are often provable only through circumstantial evidence which may include the temporal proximity between the protected activity and the alleged retaliatory action. Temporal proximity may indeed raise an inference of retaliation, but the events must be very close in time. *Cf. Texas Dept. of State Health Services v. Rockwood*, 468 S.W.3d 147, 157-58 (Tex.App.--San Antonio 2015, no pet.)("we hold this temporal proximity of approximately one month to be sufficient to raise a fact issue on the causation element of Rockwood's retaliatory discharge claim."); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)(five day span between giving testimony and adverse employment action sufficient for prima facie case) *with Clark County. School District v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)(holding that actions taken after twenty months "suggests, by itself, no causality at all"); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)(three month period insufficient); *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex.App.--Houston [14th Dist.] 1998, no pet.)(holding that a two and one-half year gap, "with nothing more, is too long to establish that there was a causal connection"); *see also Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 529 (Tex.App.--Houston [1st Dist.] 2000, pet. denied)(noting proximity may establish causal connection when protected activity and adverse employment action are separated by weeks, as opposed to months and years).

"But it also is true that there is no hard-and-fast rule that any specified amount of time is too removed for an inference of causation. Especially where a defendant retaliates at the first

opportunity that is presented, a plaintiff will not be foreclosed from making out a prima facie case despite a substantial gap in time." *Pardo-Kronemann v. Jackson*, 541 F.Supp.2d 210, 218 (D.D.C. 2008), *aff'd in part, rev'd in part on other grounds,* 601 F.3d 599 (D.C.Cir. 2010). The length of time between the protected activity and the retaliation "is part of our analysis, but not in itself conclusive of our determination of retaliation." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992); *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3rd Cir. 1997)("It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.").

More fundamental is determining what was the protected activity which started the clock from which the temporal proximity may be judged. UTEP contends that the protected activity is the claim of discrimination leading to the lawsuit in the 210th District Court, making the time gap close to a year and a half. Esparza contends the protected activity might include the notice of appeal from the dismissal of the suit in the 210th District Court. That filing was made a little less than a month before she was notified of UTEP's intent to terminate her. Pursuing an appeal of a dismissed TCHRA case might be considered "participating in any manner" in a TCHRA proceeding, assuming the decision maker was aware of her court filing. TEX.LAB.CODE ANN. § 21.055. Esparza's present pleading provides no factual basis for the retaliation claim, and we have already sustained Issue Two agreeing that it must be repled. Our only inquiry here is whether the jurisdictional evidence conclusively shows she could never replead the retaliation claim to make out a prima facie case. The various events outlined in the chronology we recite above are all raised by the plea to the jurisdiction and its attachments, and Esparza's response. It

15

is at least plausible that she might be able to replead her case to meet the causation requirement for a retaliation-termination case.

The last issue we address is UTEP's contention that any retaliation against Esparza at the post-termination hearing is not actionable because she had already been terminated. We decline to address the issue primarily because the record here is bare of any evidence explaining the nature of the post-termination process at UTEP, and in particular what relief she might have been entitled to under that procedure.

Neither party addresses whether the denial of an impartial post-termination procedure would constitute an adverse employment action. TCHRA applies only to adverse employment actions and does not provide relief for every decision made by an employer that might have some tangential effect upon employment decisions. *Anderson v. Houston Community College System*, 458 S.W.3d 633, 644 (Tex.App.--Houston [1st Dist.] 2015, no pet.). An adverse employment action requires a significant change in employment status. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998); *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002)(adverse employment actions "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating"). Events such as disciplinary filings, supervisor's reprimands, poor performance reviews, negative employment evaluations, verbal threats to fire, reprimands, and criticism of the employee's work do not constitute actionable adverse employment decisions. *Elgaghil v. Tarrant County Junior College*, 45 S.W.3d 133, 143 (Tex.App.--Fort Worth 2000, pet. denied).

Denial of a post-termination internal grievance proceeding does not constitute an "adverse employment action" unless the post-termination conduct has some tangible adverse

effect on the terms and conditions of the plaintiff's current or prospective employment. *Cantu v. Hidalgo County*, 398 S.W.3d 824, 829 (Tex.App.--Corpus Christi 2012, pet. denied)(and cases cited therein). In *Cantu*, for instance, a county employee was entirely denied the ability to pursue an internal post-termination grievance procedure because he had already filed a charge of discrimination with the Texas Workforce Commission. *Id*. at 826. The court held the denial of the post-termination procedure was not actionable under the retaliation provisions of TCHRA because the relief available under the county's grievance procedure was no greater than that available under the TCHRA claim and thus it did not harm the employee. There was no claim that the internal procedure gave the employee a better chance of reinstatement, or entitled the employee to more relief. *Id*. at 829. But the court rejected the county's argument that post-termination actions could never constitute an adverse employment action. *Id*.

We hesitate to follow *Cantu* here only because we have no jurisdictional evidence addressing the remedies and procedures of the UTEP internal grievance procedure, and neither party here has cited *Cantu* or discussed this issue.[5] In sustaining Issue Two, we anticipate that Esparza will replead her claim and that the trial court may address on a complete record whether she has met her prima facie burden for including any post-termination conduct as an adverse employment decision. Except to the extent noted, we overrule Issue Three.

## CONCLUSION

We overrule Issue One and Three. We sustain Issue Two, but only to the extent that we remand to the trial court to consider the pleadings in light of our opinion.

---

[5] The only argument that UTEP makes in its briefing regarding the post-termination hearing is that it occurred after the date of termination. UTEP then cites *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996) and *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431(1980). These cases, however, address when limitations begin to run and are simply too far afield from the TCHRA post-termination retaliation issue to be of any help.

September 28, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., Concurring in part; Dissenting in part