

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER-EL PASO, | § | No. 08-20-00202-CV |
| | § | Appeal from the |
| Appellant, | | |
| v. | § | 210th Judicial District Court |
| LORETTA K. FLORES, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2017DCV3974) |

**O P I N I O N**

Texas Tech University Health Sciences Center-El Paso (Texas Tech) appeals the trial court's denial of a plea to the jurisdiction seeking dismissal of age discrimination and retaliation claim brought by employee Loretta K. Flores. We affirm the trial court's decision as to the age discrimination claim and reverse and render as to the retaliation claim.

**BACKGROUND**

Flores was born in 1956 and began working at Texas Tech in 1993 as a temporary medical secretary when Texas Tech was still a regional campus of the Texas Tech University Health Sciences Center School of Medicine in Lubbock. Flores held several subsequent positions—assistant to the family medicine department chair, coordinator in the pediatrics department for the department chair, executive associate in the dean's office—before becoming a director in the

dean's office in 2007 under Dr. Manuel De La Rosa when Texas Tech became a four-year medical school. In that position, Flores took on a considerable amount of responsibility, worked long hours, and performed well in her job. In 2013, Texas Tech became a stand-alone university within the larger Tech system. Flores' best job evaluations as a director were issued after Dr. Lange became the Texas Tech president in July 2014. From July 2014 until May 2015, Flores retained her director position under Lange, assisting both him and De La Rosa, including supporting De La Rosa in his new capacity as provost effective November 2014.

In May 2015, Lange informed Flores her job title was going to change, her salary was going to be reduced, and she was going to be working exclusively with De La Rosa. Flores returned to an executive associate position created by Lange, which was a position she held almost two decades before. Flores was placed at the top of the executive associate pay scale at $64,000, substantially less than her director pay. Being a more "hands-on" leader, Lange decided he required an assistant position rather than a director position for his office. Lange placed a much younger employee than Flores in his office as his assistant and then began requiring Flores to report to her. Flores had previously hired this employee into an executive associate position in the dean's office.

After Flores asked, Lange did not provide any reason for the change in jobs or decrease in pay except to say that it was a reclassification, and the pay was based on her new job responsibilities. Flores complained of age discrimination, perceiving that younger employees were being treated more favorably and believing Lange had replaced her with a younger employee. Flores complained first through the internal Texas Tech grievance process. Dawn Payne, Associate Managing Director of the Texas Tech equal employment opportunity office (EEOC) whose responsibilities include investigating employee complaints, received Flores' internal complaint but did not question Lange, investigate the complaint, or communicate about it with anyone except

2

Flores. Flores then filed an age discrimination charge with the EEOC in August 2015, which Payne investigated. Flores ultimately filed a lawsuit against Texas Tech for age discrimination, which the Texas Supreme Court dismissed for want of jurisdiction.[1]

In July 2016, Lange created a new chief of staff position in his office to help oversee special projects, including budget administration; to be a liaison between the president and internal and external constituencies; and to handle other matters in his office. The job description for his chief of staff position was very similar to Flores' former director position under De La Rosa, but the chief of staff would also oversee the president's office scholarships, administer their budgets, and collaborate with institutional advancement to develop sustainability plans for scholarship funds. Even though the scholarships functions were not listed in Flores' former director position, Lange testified that he knew Flores had handled scholarships when she was a director. The president's chief of staff position and Flores' former director position both required education beyond an undergraduate degree and at least ten years of experience in increasing management responsibility in complex organizations. Lange testified he did not recall how he arrived at the chief of staff job description, but he stated he created it from scratch.

Before the new chief of staff position was established, Lange told thirty-seven-year-old Texas Tech office of auditing services director, Amy Sanchez, the position was upcoming. Lange told Sanchez he wanted her to apply for it after Sanchez informed Lange she was leaving Texas Tech to pursue other opportunities. Lange did not encourage anyone else to apply. While Sanchez is over 20 years younger than Flores, Lange testified he could not tell who was older or younger.

---

[1] The Court dismissed the claim for Flores' failure to establish the last element of a *prima facie* case: namely that she was either replaced by someone much younger or treated less favorably than younger, similarly-situated employees. *Texas Tech. Univ. Health Scis.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020). The Court found Flores' previous director position was sufficiently different from the new president's assistant position and concluded she was not replaced by someone significantly younger. *Id.* at 308. The Court further concluded that Flores and the younger employee were not similarly situated thus Flores was not treated less favorably. *Id.* at 312.

Lange disseminated the new position listing as a "confidential posting" stating he had no idea what that meant. Lange instructed Texas Tech human resources to post the position for internal and external applicants. When the chief of staff position opened, several external candidates applied. Internally, Sanchez applied for it by submitting an application and *curriculum vitae* (C.V.). Flores applied for the position as well, submitting along with her application and C.V., five letters of recommendation for the position. The recommendations from Texas Tech leaders were as follows:

1. Manuel De La Rosa, Provost: In De La Rosa's recommendation letter, he praised Flores for excelling at the duties listed in the chief of staff position, noting she was "particularly adept at investigating, analyzing, and studying information affecting inter-departmental operations" and that she was "an excellent communicator and a font of knowledge of operating policies for TTUHSC and the TTU system." He said the chief of staff position and her previous director position showed a "perfect alignment between her prior experience and this position." De La Rosa provided Flores with his "unreserved and highest recommendation."

2. Bryce McGregor, Executive Associate Dean for Administration and Chief of Staff, Dean's Office, Texas Tech University Health Sciences Center: In McGregor's recommendation letter, he stated Flores "exemplifies the characteristic and has the experience an executive can count on to get the job done and done right," "epitomize[s] true, highly moral and ethical values," and he could "think of no one better to recommend" for the chief of staff position, praising her as hardworking, diplomatic, tactful, intelligent, and possessing a wide range of abilities, skills, and knowledge of the university.

3. Maureen Francis, Assistant Dean for Medical Education: In Francis's recommendation letter, she attested to Flores' work on special projects, praising Flores' communication and interpersonal skills, professional demeanor, strong work ethic, ability to take a project from idea to completion, and organizational skills. Francis further stated Flores "is meticulous with budgeting and tracking expenses," having helped Francis manage a complicated grant budget promptly and with precision. Francis could "think of no one more qualified to serve as Chief of Staff."

4. Didit Martinez, Chief of Staff, Office of the President of Texas Tech University Health Sciences Center: In Martinez's recommendation letter, she discussed working with Flores on innumerable projects since 2008 and noted Flores' dedication to detail, determination to see tasks through to the end, strong work ethic, high moral fiber, positive attitude and ability to work with others. Martinez described Flores as fully committed to Texas Tech and El Paso and

4

Flores is one to put in long hours to get assignments entrusted to her completed on time.

5. David Porras, Business Manager, UTEP Student Health Center: In Porras's recommendation letter, he explained he had worked closely with Flores on complicated projects when she was a director. Porras stated he witnessed her meet "every challenge, deadline, and goal presented," she "tackled every problem with grace and ease," her actions "consistently inspired and motivated employees," she was hardworking and responsible, and had remarkable talents for business, management, and communication.

Lange interviewed Sanchez and Flores for the chief of staff position. At the time of his interview with Flores, Lange was aware that she had filed an age discrimination complaint internally and with the EEOC and considered it to be the "elephant in the room" during the interview. Although Lange testified he knew Flores' age, he asked her how old she was during the chief of staff job interview. Lange testified he told Flores it was "important to talk about it" but her age did not matter and had no bearing on the interview. Flores testified Lange did not tell her age did not matter. The only other comment Lange made to Flores regarding age was a year earlier when Lange asked about her age and mentioned he did not want her to retire. When Lange interviewed Sanchez, he did not ask her how old she was or how long she expected to work.

Lange chose Sanchez for the position at the beginning of August 2016, and she started later that month. Lange was the sole decision maker; he did not discuss his decision with anyone prior to making it. Texas Tech produced no documentation reflecting how Lange chose Sanchez over Flores besides Lange's subsequent March 2019 affidavit produced in the litigation context. In December 2016, Flores complained of age discrimination as well as retaliation for having filed her 2015 EEOC age discrimination charge.

In his March 2019 affidavit, Lange stated he "lacked confidence in certain of [Flores'] competencies, such as grant management, auditing, budgeting, and her ability to follow instructions and receive constructive feedback." In the same affidavit, Lange stated "[n]either Ms.

5

Flores' 2015 Charge, nor her age, had anything to do with [his] decision to not select Ms. Flores for the Chief of Staff position. Ms. Sanchez was simply the better qualified candidate—mostly because of her auditing and accounting background and skillset, and broad range of experience." There is no evidence in the record Lange had ever criticized Flores' performance or questioned her abilities before Flores complained of age discrimination.

During his June 2019 deposition, Lange asserted Sanchez was better qualified because she had more experience in "areas [he] was most interested in," namely business, audits, grants, and finances as "broad categories" that " in the general things of assisting the president." Yet those areas were not identified within the essential job function parameters in the position Lange himself created. Lange asserted during her interview, Flores "confirmed that she did not feel comfortable or have experience in" the areas of business, accounting, and audits. He further claimed she had "an experience poorly managing grants." There is no other evidence or documentation in the record to that end.

## DISCUSSION

### *Issues*

In four issues, Texas Tech maintains the trial court improperly denied its plea to the jurisdiction as to Flores' age discrimination and retaliation claim. We disagree as to Flores' age discrimination claim but agree regarding Flores' retaliation claim.

### *Applicable Law*

The Texas Commission on Human Rights Act (TCHRA) prohibits employers from discriminating against employees and applicants on the basis of age. TEX.LAB.CODE ANN. § 21.051.

> An employer commits an unlawful employment practice if because of . . . age the employer:

6

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

*Id.* § 21.051(1)-(2). The TCHRA also protects employees against retaliation for reporting or opposing discrimination:

An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:

(1) opposes a discriminatory practice;

(2) makes or files a charge;

(3) files a complaint; or

(4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

*Id.* § 21.055. The underlying discrimination claim need not be substantiated to protect an employee against retaliation for making the claim; the employee need only reasonably believe in good faith that the conduct complained of was discriminatory. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000); *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 374 n.24 (5th Cir. 2000). We look to both federal and state precedent to guide our decision making and interpretation of the TCHRA, which exists to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX.LAB.CODE ANN. § 21.001(1); *Bowen v. El Paso Elec. Co.*, 49 S.W.3d 902, 908 (Tex.App.—El Paso 2001, pet. denied); *Caballero v. Cent. Power & Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993).

7

### *Standard and Scope of Review*

We review the trial court's ruling on Texas Tech's jurisdictional plea *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). In this instance, as a governmental entity, Texas Tech has immunity against suit under the Texas Commission on Human Rights Act (TCHRA) unless Flores can state a claim for conduct that violates the statute. *Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 532 n.4 (Tex. 2017); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). Here, Texas Tech challenges the existence of jurisdictional facts sufficient to waive its sovereign immunity under the TCHRA. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012).

At this stage, Flores need not prove her entire case on the merits. Whether by jurisdictional plea or summary-judgment motion, the plaintiff is not put to the ultimate burden of proof but must only raise a fact issue on the existence of illegal intent. *Alamo Heights*, 544 S.W.3d at 785-86. "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id.* at 771. At the same time, we cannot disregard unfavorable inferences to her where a rational fact finder could not do so. *Id.*

Waiving governmental immunity in a TCHRA claim necessarily implicates the facts of the case and does so at a stage in the case where the parties have not yet fully engaged in the discovery process. To avoid dismissal of her claim for lack of jurisdiction, a plaintiff must raise a genuine issue of material fact in the context of the three-part *McDonnell Douglas* burden-shifting framework. *Alamo Heights*, 544 S.W.3d at 770-71 and 782; see underlying framework at *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). If Flores can show a *prima facie* case, the burden shifts to Texas Tech to articulate a nondiscriminatory/nonretaliatory reason

8

for its action. *Alamo Heights*, 544 S.W.3d at 782. If Texas Tech can articulate such a reason, the burden shifts back to Flores. *Id.* at 770-71 and 782; *Apache Corp. v. Davis*, 627 S.W.3d 324, 325-26 (Tex. 2021). For her age discrimination claim, she must raise a genuine issue of material fact that Texas Tech's proffered reason for the action was pretextual. *Alamo Heights*, 544 S.W.3d at 770-71 and 782; *Apache Corp. v. Davis*, 627 S.W.3d at 325-26. For her retaliation claim, Flores must raise a genuine issue of material fact that the protected activity was the but-for cause of the adverse action. *Alamo Heights*, 544 S.W.3d at 770-71 and 782; *Apache Corp. v. Davis*, 627 S.W.3d at 325-26.

## AGE DISCRIMINATION CLAIM

### *Prima Facie Case*

To establish a *prima facie* case of age discrimination, Flores must show that: (1) she was not hired for the position she applied for; (2) she was qualified for the position; (3) she was a member of a protected class; and (4) someone younger was hired for the position. *Tex. Dep't of Aging & Disability Services v. Lagunas*, 546 S.W.3d 239, 251 (Tex.App.—El Paso, 2017, no pet.).

We find Flores meets her *prima facie* case. She was not hired for the chief of staff position, but was qualified for the position, and she was over 40 years of age at the time. Further, Sanchez, who was hired as chief of staff, was under 40 years old and more than 20 years younger than Flores.

### *Proffered Nondiscriminatory Reason for Nonselection*

Once the employee establishes a *prima facie* case of age discrimination, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action. *Moreno v. Texas Dep't of Transp.*, 440 S.W.3d 889, 895 (Tex.App.—El Paso 2013, pet. denied). In the present case, Texas Tech meets this burden of production through Lange's testimony that Ms. Flores' age had

9

nothing to do with her nonselection, but "Ms. Sanchez was simply the better qualified candidate—mostly because of her auditing and accounting background and skillset, and broad range of experience."

### *Showing of Pretext or Discrimination as a Motivating Factor*

Once the employer proffers a nondiscriminatory reason for its action, the employee must show the stated reason was a mere pretext for age discrimination. *Id*. In *Reeves*, the U.S. Supreme Court determined that Reeves's indirect evidence of pretext, consisting solely of discrediting his employer's proffered nondiscriminatory reason for the adverse action, was sufficient to sustain the jury's finding of intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000). The Supreme Court explained that the court of appeals had misconceived the plaintiff's burden of proving discrimination by "proceed[ing] from the assumption that a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is insufficient as a matter of law to sustain a jury's finding of intentional discrimination." *Id.* at 146. Referencing its earlier decision in *St. Mary's Honor Center*, the Court explained that a jury may infer intentional discrimination from the employer's discredited reason for the adverse action. *Id.* at 147 (stating "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993).

In the present case, Flores can show pretext for age discrimination in one of three ways: (1) by direct evidence showing that her age was a motivating factor in Lange's decision not to

select Flores for the chief of staff position;[2] (2) that Flores was clearly better qualified for the chief of staff position;[3] or (3) that Lange's proffered reason for the nonselection is "false or 'unworthy of credence,'"[4] in which case a fact finder may conclude the employer unlawfully discriminated. *Reeves*, 530 U.S. at 148. A plaintiff need not produce separate evidence of discrimination *per se*. *Id.* at 149. In *Quantum Chemical*, the Texas Supreme Court followed U.S. Supreme Court precedent in *Reeves*, stating "[p]roving that the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find the employer was actually motivated by discrimination." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 481-82 (Tex. 2001). Several of our sister courts have similarly opined.[5]

Flores did not provide direct evidence showing Lange was motivated by age discrimination in his decision making. And while Texas Tech correctly asserts "employers are generally free to weigh the qualifications of prospective employees, so long as they are not motivated by [age],"[6] Flores did not endeavor to prove that she was clearly more qualified than Sanchez. Instead, she called into question Lange's proffered reasons for her nonselection.

---

[2] TEX.LAB.CODE ANN. § 21.125(a); *see Reeves*, 530 U.S. at 146; *see also Michael v. City of Dallas*, 314 S.W.3d 687, 691 (Tex.App.—Dallas 2010, no pet.)(plaintiff failed to show a *prima facie* case on the City's summary judgment motion).

[3] *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018)(explaining the plaintiff cannot just be as qualified or merely better when proving pretext through this route).

[4] *Roberson-King*, 904 F.3d at 381 (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)(quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001); *Stennett v. Tupelo Pub. Sch. Dist.*, 619 Fed.Appx. 310, 316 (referencing *Patterson v. McLean Credit Union*, 491 U.S. 164, 187-89 (1989)) *superseded on other grounds by statutes*, Civil Rights Act of 1991, 42 U.S.C. § 1983.

[5] *See, e.g.*, *Jefferson County v. Davis*, No. 14-13-00663-CV, 2014 WL 4262184, at *7 (Tex.App.—Houston [14th Dist.] Aug. 28 2014, pet. denied)(mem. op.)(inferring age as a motivating factor when considering evidence of pretext in the context of other references to age); *Dell, Inc. v. Wise*, 424 S.W.3d 100, 112 (Tex.App.—Eastland 2013, no pet.)(stating evidence that an employer is pleased with an employee's work performance supports a finding of pretext when that evidence contradicts the reason given by the employer of poor performance); *see also White v. Schlumberger Ltd.*, No. 01-05-00685-CV, 2006 WL 948074, at *4 (Tex.App.—Houston [1st Dist.] Apr. 13, 2006, no pet.)(mem. op.)(reinforcing that employer is entitled to summary judgment if plaintiff creates only a weak issue of fact but employer proffers abundant uncontroverted independent evidence that no discrimination had occurred, citing *Reeves*, 530 U.S. at 148).

[6] *Martinez v. Tex. Workforce Comm'n*, 775 F.3d 685, 688 (5th Cir. 2014).

11

The *Laxton* court explained the parameters of this analysis: "Our concern is whether the evidence supports an inference that [the employer] intentionally discriminated against [the employee], an inference that can be drawn if its proffered reason was not the real reason for [the adverse action]. Therefore, to survive [the employer's] motion for judgment as a matter of law, [the employee] must produce evidence permitting the jury to disbelieve that [the employer's] proffered reason was its true motivation." *Laxton v. Gap Inc.*, 333 F.3d 572, 579–80 (5th Cir. 2003).

If a rational jury could find Texas Tech's explanation for not selecting Flores for the chief of staff position was pretextual based on a genuine issue of material fact calling into question Lange's credibility and his proffered reasons, since he carried the exclusive, unquestioned authority over Texas Tech's decision not to select Flores for the chief of staff position, then Texas Tech is not entitled to immunity. *See*, *e.g., Reeves*, 530 U.S. at 148.

When considering the record as a whole, Flores argues that a rational fact finder could reasonably reject as pretextual Texas Tech's position Lange "honestly believed Sanchez to be better qualified." First, Flores provided evidence showing she was eminently qualified for the chief of staff position, she had vast experience performing the same functions, and she did so very well— even while working under Lange. Second, after Flores complained of age discrimination, Lange mentioned concerns over Flores' competencies. Third, Lange's reason for considering Sanchez more qualified for the position was inconsistent with his proffered documentation to establish what the position required. Fourth, Lange told Sanchez about the position before it was created and encouraged her to apply. Lange testified he did not know Sanchez was younger than Flores. Flores is more than 20 years older than Sanchez. Lange testified he knew Flores' age—she was the same age as Lange. Fifth, Lange testified age had nothing to do with his decision, but he admitted he

12

had Flores' age discrimination complaint on his mind when he asked what Flores' age was during the chief of staff interview despite knowing it and telling her it did not matter. Flores did not recall that interview the same way; she testified Lange did not say age did not matter and she did not answer when he asked about her age. The evidence is further articulated below.

- Flores provided evidence showing she had vast experience performing the chief of staff functions when Dr. De La Rosa attested to the "perfect alignment" between Flores' experience and the chief of staff position functions. Lange testified he created the job description for his new chief of staff position; he did not recall how he created it, only that he created it "from scratch." Its description, major functions, and qualifications are almost identical to those of Flores' previous director position. The difference in job functions listed between the director and chief of staff positions, *i.e.*, those pertaining to scholarships, was something Lange testified to being aware of Flores having done as a director despite not being listed in the chief of staff job description.

- Flores had excellent reviews of her job performance when she was performing the director functions. This is evidenced by her evaluations as well as the input of five recommenders who worked with Flores in her capacity as a director and could attest to her skills and abilities in terms of the director job duties. All five recommenders praised Ms. Flores' ability to perform those functions.

- While Texas Tech claim Lange was not satisfied with Flores' job performance as a director, nowhere in the record are any such performance deficiencies or criticisms documented. Flores was working for Lange during the time she received her most recent two evaluations in her director position. And those two evaluations were her best in that position. The only evidence to support Texas Tech's claim is Lange's own testimony, which is by its nature self-interested. Lange never complained of concern over Flores' "competencies" until after she filed an age discrimination complaint, and he was defending against a lawsuit. There is no contemporaneous documentation of any problems with or concerns over Flores' work or her competencies.[7] Quite the opposite, the record shows she had an excellent work record up to the point where she complained of age discrimination by Lange.

- Lange did not testify he based his decision on his purported concerns over Flores' competencies, but instead, he stated Sanchez was more qualified than Flores because Sanchez had more experience "in the areas [he] was most interested in": namely "business, audits, grants, and finances." However, the areas of business, audits, grants, and finances

---

[7] *See, e.g.*, *Laxton*, 333 F.3d at 580-82; *Evans v. City of Houston*, 246 F.3d 344, 355-56 (5th Cir. 2001)(asserting that Laxton's showing of pretext by proffering evidence that employer's allegations of her work deficiencies were not accurate was sufficient to overcome summary judgment).

were not listed to any degree on the job description for the chief of staff position—the job description that Lange himself created from scratch.[8]

- Even before his chief of staff position was created, Lange told Sanchez about it and encouraged her to apply. He testified he did not encourage anyone else to apply.

Texas Tech's case rests on Lange's position and his credibility, as he was the sole, unquestioned decision maker on behalf of Texas Tech in this case. In *Stennett*, the court discussed the opportunities subjective hiring criteria provide for discrimination "because the criteria itself may be pretext for age discrimination." *Stennett v. Tupelo Pub. Sch. Dist.*, 619 Fed.Appx. 310, 322 (5th Cir. 2015) referencing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001). Like Flores, the employee in Stennett "illustrates how reliance upon subjective and previously unmentioned or peripheral hiring criteria could help support a rational jury's finding of pretext." *Stennett*, 619 Fed.Appx. at 322.

At this stage, Flores need not prove her entire case on the merits but must only raise a genuine fact issue. *See Alamo Heights*, 544 S.W.3d at 785-86. "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id*. at 771. At the same time, we cannot disregard unfavorable inferences to her where a rational fact finder could not do so. *Id.*

Here, the record reveals legally sufficient evidence constituting genuine issues of material fact calling Lange's proffered reasons for the nonselection into question—issues for a fact finder to determine. Based on the evidence as viewed in a light most favorable to Flores, without making credibility determinations or weighing the evidence and without ignoring evidence that a jury

---

[8] A rational jury could take "'previously unmentioned' job requirements" as a genuine issue of material fact of pretext, especially in tandem with other evidence. *See, e.g.*, *Stennett*, 619 Fed.Appx. at 322 (citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010)).

could not ignore, we find that a reasonable fact finder could conclude that Lange's proffered reasons were pretextual and that age was at least a motivating factor in Texas Tech's decision not to select Flores for the chief of staff position. Appellant's Issues Three and Four are overruled.

## RETALIATION CLAIM

### *Prima Facie Case*

To establish a *prima facie* case of retaliation, Flores must show that: (1) she engaged in protected activity; (2) she experienced an adverse employment action; and (3) there was a causal link between the two. *Alamo Heights*, 544 S.W.3d at 782; *Medina*, 238 F.3d at 684.

There is no dispute that Flores filed an age discrimination complaint both internally and with the EEOC. It is also undisputed that Flores was not selected for the chief of staff position, for which she applied and was qualified. However, Texas Tech argues Flores' retaliation case fails for a lack of a temporal connection between the filing of an age discrimination charge and the nonselection, as just over a year passed between the time she first complained about age discrimination and the nonselection. While a causal link is easily satisfied by a showing of close temporal proximity between the protected activity and adverse action,[9] the temporal connection is not dispositive of whether the employer retaliated. *See*, *e.g.*, *Shirley v. Chrysler First, Inc*., 970 F.2d 39, 43-44 (5th Cir. 1992); *Univ. of Tex. at El Paso v. Esparz*a, 510 S.W.3d 147, 159 (Tex.App.—El Paso 2016, no pet.). An employee can establish a causal link when "the employer's decision . . . was based in part on knowledge of the employee's protected activity" or that the protected activity and the adverse action were "not wholly unrelated." *Medina*, 238 F.3d at 684, citing *Sherrod v. American Airlines, Inc*, 132 F.3d 1112, 1122 (5th Cir. 1998) then *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).

---

[9] See *Alamo Heights*, 544 S.W.3d at 782.

The evidence in the record confirms the complaint was on Lange's mind during the selection process because Lange was well-aware of Flores' age discrimination complaint when he interviewed Flores for the chief of staff position; Lange said as much, calling it "the elephant in the room" during the interview. He went so far as to address her age during the interview, although there is an evidentiary dispute as to whether he told her that age did not matter. We hold this is enough to show that Flores' age discrimination complaint and the chief of staff selection process were not completely unrelated, and for that reason Flores met her basic *prima facie* case burden here.[10]

### *Proffered Nonretaliatory Reason*

Once the employee establishes a *prima facie* case of retaliation, then the burden shifts to the employer to articulate a nonretaliatory reason for the adverse action. *Medina*, 238 F.3d at 684 referencing *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). In the present case, Texas Tech meets this burden of production through Lange's testimony that "Ms. Flores' 2015 Charge . . . had [nothing] to do with [his] decision not to select Ms. Flores for the Chief of Staff position. Ms. Sanchez was simply the better qualified candidate—mostly because of her auditing and accounting background and skillset, and broad range of experience."

### *Showing of But-For Causation*

Because Texas Tech proffered a nondiscriminatory reason for the nonselection, Flores must raise a genuine issue of material fact showing "the adverse action would not have occurred 'but for' the protected activity" to overcome governmental immunity. "The but-for causation standard is significantly more difficult to prove than *prima facie* causation." *Alamo Heights*, 544

---

[10] *See, e.g.*, *McGrath-Malott v. Maryland*, 565 F.Supp.2d 656, 671 (D. Md. 2008)(discussing that because employee's complaint was referenced in her supervisors' notes at the time of their meeting, it was "clearly still on their minds" in terms of the *prima facie* causal link element).

16

S.W.3d at 782; *see also Apache Corp.*, 627 S.W.3d at 335. The employee does not have to prove that filing the complaint was the sole reason the nonselection occurred when it did, but the causal link is destroyed if the sole reasons for the nonselection are unrelated to filing the complaint. *Texas Dep't of Human Services v. Hinds*, 904 S.W.2d 629, 634, 637 (Tex. 1995); *Office of Attorney General v. Rodriguez*, 605 S.W.3d 183, 192 (Tex. 2020).

To help discern but-for causation in the absence of direct evidence, we may evaluate circumstantial evidence (and reasonable inferences flowing from such evidence) regarding any or all of the following factors: (1) knowledge of the complaint by Lange—the individual who made the nonselection decision for Texas Tech; (2) whether Texas Tech had a negative attitude toward Flores' age discrimination complaint; (3) whether there was a failure on the part of Texas Tech to follow its policies; (4) whether Flores suffered discriminatory treatment compared to similarly situated employees; and (5) whether the proffered reason for the nonselection was false. *Apache Corp.*, 627 S.W.3d at 336 n.3 referencing *Alamo Heights*, 544 S.W.3d at 790; *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 450-51 (Tex. 1996). Depending on the case, some of these *Continental Coffee* factors may be more probative than others; accordingly, the factors are not simply to be applied and weighed equally in a mechanistic fashion. *See Tex. Health & Human Services Comm'n v. Enriquez*, 642 S.W.3d 21, 32-33 (Tex.App.—El Paso 2021, no pet.)(citing *Apache Corp.*, 627 S.W.3d at 336-37). We may also consider the proximity in time between an age discrimination complaint and the nonselection. *See Echostar Satellite L.L.C. v. Aguilar*, 394 S.W.3d 276, 288 (Tex.App.—El Paso 2012, pet. denied).

While Flores both established that Texas Tech had knowledge of her age discrimination complaint at the time of the nonselection and raised a genuine issue of material fact as to the

17

credibility of Lange's proffered reason for the nonselection, she was unable to present legally sufficient evidence bearing on the other but-for causation analysis factors.

Flores did not draw a temporal nexus between her EEOC charge and her nonselection, except that the nonselection took place approximately two months after Flores received her right to sue notice from the EEOC. Flores provides no legal authority to support the notion that a temporal connection between the issuance of an EEOC right to sue letter and her nonselection bears on causation in a retaliation suit. Flores did not offer any concrete evidence to show that Texas Tech had a negative attitude toward Flores' age discrimination complaint, although she did intimate a negative attitude on Lange's part through his raising her age in the interview and in Lange questioning certain "competencies" only after Flores complained. Flores suggested that Texas Tech violated its policy of widely posting the chief of staff position because the position was labeled "confidential posting." However, this label is not enough to show that Texas Tech did not follow its policies because Lange instructed human resources to post the position internally and externally and the posting reached several external candidates who did apply. Flores did not proffer any specific evidence to show that she suffered discriminatory treatment compared to similarly situated employees. Taking the record as a whole, specifically in light of the *Continental Coffee* factors, a rational jury could not conclude that Texas Tech would not have selected her at that time but for Flores complaining of age discrimination. Appellant's Issue Two is sustained.

**CONCLUSION**

The TCHRA has waived Texas Tech's governmental immunity only regarding Flores' age discrimination claim. Appellant's Issue One is sustained in part and overruled in part. The trial court's judgment is affirmed as to the denial of the plea to jurisdiction regarding Flores' age

18

discrimination claim. We remand that claim to the trial court for further proceedings consistent with this opinion.

However, Appellee did not establish claim of retaliation. Therefore, the trial court erred in its denial of Appellant's plea to jurisdiction regarding Flores' retaliation claim. We reverse the denial of the plea to jurisdiction and render granting of the plea to the jurisdiction as to Flores' retaliation claim ONLY.

August 30, 2022

YVONNE T RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ