

# NUMBER 13-23-00033-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CITY OF PHARR, TEXAS,                                                                 Appellant,

v.

HERIBERTO DE LEON,                                                                 Appellee.

On appeal from the 93rd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Silva**

Appellant City of Pharr, Texas (City) appeals the trial court's denial of its plea to

the jurisdiction as to appellee Heriberto De Leon's claims of wrongful termination against

it. The City argues that its sovereign immunity was not waived for each of De Leon's three

grounds for wrongful termination: (1) retaliation under the Texas Whistleblower Act (the

Act), *see* TEX. GOV'T CODE ANN. § 554.002(a); (2) discrimination on the basis of disability, *see* TEX. LAB. CODE ANN. § 21.051(a); and (3) retaliation for engaging in a protected activity recognized under the Texas Commission on Human Rights Act (TCHRA), *see id.* § 21.055. We affirm in part and reverse and render in part.

## I.  BACKGROUND

### A.  De Leon's Claims

De Leon's live pleading alleges that he was employed by the City for almost twenty years until he was terminated on or about May 9, 2018.[1] De Leon's petition alleged that he was terminated for three unlawful reasons: (1) the City retaliated against him for making a report to the Texas Commission on Environmental Quality (TCEQ) regarding a wastewater spill; (2) the City discriminated against him for his disabilities, namely hypertension, depressive disorder, and anxiety disorder; and (3) the City retaliated against him for filing a complaint with the Texas Workforce Commission (TWC) by denying his appeal regarding termination of his employment. De Leon's disability discrimination claim also includes a claim for failure to accommodate.

According to De Leon, during his employment with the City, "a major wastewater spill occurred at the [City's] wastewater treatment plant on or about February 11, 2018, and a sanitary sewer overflow occurred at the [City's] Lift Station on or about August 2017 (together, the '[o]ccurrences')." Although the City reported the occurrences to the TCEQ, De Leon believed the reports were insufficient and "informed the [City] of the possible

---

[1] De Leon's third amended petition was the live pleading at the time the City filed its plea to the jurisdiction and combined traditional and no-evidence motion for summary judgment. On December 13, 2022, De Leon filed a fourth amended petition, which was substantially similar to the third amended petition. After the trial court denied the City's plea, De Leon filed a fifth amended petition.

2

and/or actual misrepresentations in the report to the [TCEQ] so that they could be corrected." However, De Leon alleged the City failed to correct its reports, so he notified the TCEQ of the possible misrepresentations. De Leon states that he was terminated after he made the reports to the TCEQ.

As to his discrimination claim, De Leon alleged that he "was diagnosed with hypertension and depressive and anxiety disorders," necessitating his leave under the Family Medical Leave Act (FMLA) beginning on or about February 1, 2018. According to De Leon, bullying and harassing treatment from his supervisor, Jose Villescas, triggered his depressive and anxiety disorders, as well as hypertension. De Leon was scheduled to return to work on May 10, 2018, and, in preparation of his return, sent a letter to the City on May 9, 2018, "requesting accommodations." However, according to De Leon, the City denied his accommodations and instead sent him a letter that his employment was being terminated. De Leon thereafter filed an employment discrimination complaint, which he alleges serves as the basis for his TCHRA retaliation claim when the City denied his employment termination appeal on June 12, 2018.

**B.      The City's Plea to the Jurisdiction and Motion for Summary Judgment**

The City filed a plea to the jurisdiction, or in the alternative, a combined traditional and no-evidence motion for summary judgment, alleging that it enjoyed immunity from De Leon's claims, which had not been waived. The City alleged that De Leon had "not [pleaded] nor [could he] show jurisdictional facts sufficient to waive the City's immunity for either a retaliation or whistleblower claim." The City attached twenty exhibits to its plea and combined motion for summary judgment.

For De Leon's Whistleblower claim, the City alleged De Leon did not make the reports to the TCEQ in good faith because he "was not present at the time of the alleged violations and merely passed on hearsay he heard or reported things that had already been reported." The City additionally claimed that De Leon's communication with TCEQ was a mere inquiry and could not be classified as a "report." The City further argued that De Leon was not able to show that his termination was based on his reports because the City manager, Juan Guerra, was unaware of the reports and it had a nonretaliatory basis for his termination.

The City provided a multifaceted basis in which it alleged its immunity had not been waived for De Leon's discrimination claim. First, the City alleged that De Leon had not pleaded a prima facie case because his "alleged disability was exclusively caused by the relationship with his [d]epartment supervisor Villescas," which shows "that the 'disability' that kept him out of work and needed accommodation, was solely a dislike and inability to work with his boss." Further, the City posited that De Leon's argument and attendant evidence established that De Leon was not disabled.

The City alternatively alleged that De Leon "ha[d] not and cannot show that he was otherwise qualified for the job when he was terminated because he could not perform the essential function of his job with or without 'accommodations.'" In support of this argument, the City pointed to a letter from De Leon's counselor, which, according to the City, "indicated that it was her professional opinion that [De Leon] could not return to work until she deemed he was 'capable of doing so' without a firm return date."

Lastly, the City argued that De Leon "ha[d] not and cannot establish jurisdictional

4

facts that he was qualified for the job because his requests for accommodations were unreasonable and would not have enabled him to perform the essential functions of an Assistant Director for the Utilities Department." The City pointed to a letter that De Leon provided, offering three possible accommodations for him to be able to return to work: (1) limiting interactions between De Leon and his supervisor to email or other written forms of communication; (2) assigning De Leon a different supervisor; and (3) providing De Leon with additional leave for counseling without an expected return date. The City argued that each of these requests were not reasonable or that they constituted an undue burden on the City.

The City's traditional motion for summary judgment incorporated the same evidence and arguments as its plea to the jurisdiction. The City's no-evidence plea challenged various elements of each cause of action. For De Leon's Whistleblower claim, the City argued that he "ha[d] no evidence that he made a report to law enforcement authority in good faith; that the City knew he made reports to law enforcement authority (here TCEQ) when it terminated him; or that the City terminated him because of his alleged reports to a law enforcement authority." For his disability discrimination claim, the City argued that De Leon

> ha[d] no evidence that at the time of his termination he was in fact disabled; that he was otherwise qualified for his job when his doctor would not permit him to return to work; that he made or requested any reasonable accommodations; or that any accommodations would not cause undue burden and be justified by business necessity.

Lastly, for De Leon's TCHRA retaliation claim, the City argued that De Leon "ha[d] no evidence that he took any protected action pursuant to the Retaliation statute prior to his termination; and has no evidence that his termination was causally related to any alleged

5

protected action under the Retaliation statute."

## C.      De Leon's Response

De Leon responded to the City's plea to the jurisdiction and motion for summary judgment, including sixteen of his own exhibits.

To support his Whistleblower claim and rebut the City's argument, De Leon cited his deposition testimony wherein he testified that he made a report to the TCEQ and met with the TCEQ and the Environmental Protection Agency (EPA). According to the evidence presented by De Leon, he contacted the TCEQ on February 9, February 22, and April 11, 2018, regarding potential wastewater spill reporting violations by the City. Thus, De Leon argued that his termination on May 10, 2018, was within ninety days of his report, which created the presumption of causation. Moreover, De Leon averred that his belief that the City underreported wastewater spills was based on information he received from other employees and on his training and experience working with wastewater spills and TCEQ reporting.

For his disability claim, De Leon relied on evidence including a letter from Thelma Ramos, a licensed professional counselor, who provided therapy to De Leon for depression and anxiety disorder. The letter stated that De Leon "continues to struggle with his diagnosed depression and anxiety disorder," and it was her "expert opinion that a return to the condition that caused the initial psychological disorders will retrigger and would jeopardize his health and over all wellbeing." Although Ramos recommended that "De Leon not return to work until [she] deemed [him] capable of doing so," she requested that "[i]f his return to work [was] absolutely necessary," all efforts be made to

accommodate him. De Leon attached an unsworn declaration, averring that he was diagnosed with and received treatment for hypertension and "generalized anxiety disorder" by his physician, Daniel J. Guerra. The declaration stated that the "anxiety disorder, depression, and hypertension have substantially disrupted [his] sleeping, thinking[,] and concentrating."

Finally, for his TCHRA retaliation claim, De Leon reiterated that he appealed his termination by letter dated May 10, 2018, which the City denied after De Leon reported a disability discrimination claim to the TWC. De Leon argued that the City's decision to deny the appeal "was discriminatory, retaliatory, and punitive."

## D.    Trial Court Ruling

The trial court denied the City's plea and joint motions for summary judgment. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5).

## II.    STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.*

A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "When a defendant

7

challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Id.* (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555); *see Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022) (explaining that a plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both). This is true even when the jurisdictional issue intertwines with the merits of the case. *Swanson*, 590 S.W.3d at 550. A municipality may also challenge the trial court's jurisdiction on a no-evidence basis. *Id.* at 551.

When jurisdictional facts are challenged, our standard of review mirrors that of a summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex. 2018). We must take as true all evidence favorable to the nonmovant, indulge every reasonable inference and resolve any doubts in the nonmovant's favor, and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 771; *Miranda*, 133 S.W.3d at 228. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a factfinder must resolve the issue. *Miranda*, 133 S.W.3d at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228.

A no-evidence challenge to jurisdiction applies the same standard as a no-evidence motion for summary judgment. *Swanson*, 590 S.W.3d at 551. Under a no-evidence motion for summary judgment, the movant may challenge the existence of facts that would support a waiver of immunity. *Id.* (citing TEX. R. CIV. P. 166a(i)). Once the

8

movant challenges the existence of jurisdictional facts, the nonmovant must produce enough evidence to create a genuine issue of material fact as to the challenged element. *Id.* at 552. Similar to a traditional motion for summary judgment, evidence is viewed in a light most favorable to the nonmovant. *Id.* at 551.

"A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The evidence must "rise[] to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). However, a factfinder may not reasonably infer an ultimate fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another. *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 313 (Tex. 2015) (quoting *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013)). Furthermore, evidence does not create a fact issue if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Parker*, 514 S.W.3d at 220.

### III. TCHRA CLAIMS

**A. Applicable Law**

The TCHRA prohibits, among other things, age, disability, and national origin discrimination and retaliation by employers. *See* TEX. LAB. CODE ANN. §§ 21.001, 21.051, 21.055. Section 21.051 of the labor code states:

> An employer commits an unlawful employment practice if because of . . . disability . . . national origin, or age the employer . . . fails or refuses

9

to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]

*Id.* § 21.051(1). Section 21.055 provides that an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who, under chapter 21 of the labor code, "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." *Id.* § 21.055. An "employer" includes "a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed." *Id.* § 21.002(8)(D).

"Governmental units . . . are immune from suit unless the [S]tate consents." *Clark*, 544 S.W.3d at 770. "The TCHRA waives immunity from suit only for statutory violations, which means the trial court lacks subject-matter jurisdiction over the dispute absent" a claim for conduct that is recognized under the TCHRA. *Id.* at 763. If a plaintiff fails to allege a violation of the TCHRA, then the trial court does not have jurisdiction, and the claim should be dismissed. *Garcia*, 372 S.W.3d at 637.

Because the TCHRA is modeled after federal civil rights law, we may look to analogous federal precedent for our guidance. *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 59 (Tex. 2021) (citing *Clark*, 544 S.W.3d at 781); *Brownsville Indep. Sch. Dist. v. Alex*, 408 S.W.3d 670, 674 n.6 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.); *see* TEX. LAB. CODE ANN. § 21.001. To establish unlawful discrimination under the TCHRA, a plaintiff may rely on either direct or circumstantial evidence. *Clark*, 544 S.W.3d at 781–82. A case based on circumstantial evidence is referred to as a "pretext" case. *See Quantum Chem. Co. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (per curiam). In a

10

pretext case, the plaintiff's goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *Id.*

"When a plaintiff relies on circumstantial evidence to establish a discrimination claim, we follow the burden-shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tex. Tech Univ. Health Scis. Ctr.–El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020); *Clark*, 544 S.W.3d at 782. Under this framework: (1) the plaintiff must first create a presumption of illegal discrimination by pleading a prima facie case; (2) the defendant must then rebut that presumption by producing evidence of a legitimate, non-discriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by producing evidence that the defendant's stated reason is a mere pretext. *Flores*, 612 S.W.3d at 305; *Clark*, 544 S.W.3d at 782. If a plaintiff fails to establish a prima facie case against a governmental unit or overcome the rebuttal evidence, then the trial court lacks jurisdiction and must dismiss the case. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 225–26.

The requirements to establish a prima facie case of discrimination "vary depending on the circumstances." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017). To establish a prima facie case of disability discrimination, De Leon must show "(1) he has a 'disability[';] (2) he is 'qualified' for the job; and (3) he suffered an adverse employment decision because of his disability." *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 436 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). And, to establish a prima facie case of retaliation, De Leon must show "(1) [he] engaged

in an activity protected by the TCHRA, (2) [he] experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Lara*, 625 S.W.3d at 58.

"'Disability' means, with respect to an individual, a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LAB. CODE ANN. § 21.002(6). "Major life activity" encompasses a wide number of functions, which includes, but is not limited to:

> caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. The term also includes the operation of a major bodily function, including, but not limited to, functions of the immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

*Id.* § 21.002(11-a).

De Leon can show that he was qualified for his position "in one of two ways: (1) by proving that he can perform all essential job functions with or without modifications or accommodations; or (2) by showing that some reasonable accommodation by the employer would enable him to perform the job." *Donaldson*, 495 S.W.3d at 437.

"Under a reasonable accommodation claim, a plaintiff must show that (1) he has a 'disability;' (2) an employer covered by the statute had notice of his disability; (3) with 'reasonable accommodations' he could perform the 'essential functions' of his position; and (4) the employer refused to make such accommodations." *Id.* at 439. "Once an employee makes such a request, however, the employer is obligated by law to engage in an 'interactive process': 'a meaningful dialogue with the employee to find the best means

12

of accommodating that disability.'" *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)). "When an employer does not engage in a good faith interactive process, that employer violates the ADA [Americans with Disabilities Act]—including when the employer discharges the employee instead of considering the requested accommodations." *Id.*; *see Harmon v. Tex. S. Univ.*, 672 S.W.3d 684 (Tex. App.— Houston [14th Dist.] 2023, no pet.) (applying *Chevron Phillips Chemical* to TCHRA claims).

"An employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE ANN. § 21.055. "To establish a violation, the employee must show that: (1) []he engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015).

**B.    Analysis**

**1.    Disability Discrimination**

The City challenges several components of De Leon's discrimination claim, arguing that De Leon: (1) failed to establish a prima facie discrimination claim; (2) did not have a disability under the TCHRA; (3) was not qualified for his position; (4) did not request reasonable accommodations; and (5) requested accommodations that would

13

impose an undue burden on the City.[2] The City also argues that it had a valid, nondiscriminatory reason for terminating De Leon's employment. We address each challenge in turn.

### a. Did De Leon plead a prima facie case?

In support of its argument that De Leon failed to allege a prima facie disability discrimination claim, the City points to De Leon's pleadings, arguing that De Leon "alleged [that his] disability was exclusively caused by his relationship with his department supervisor." However, we disagree. De Leon's live pleading alleged that he suffered from hypertension, depression, and anxiety disorder, which affected his ability to sleep, think, and concentrate. *See* TEX. LAB. CODE ANN. § 21.002(6), (11). De Leon also pleaded that he was qualified for his position and included pertinent facts to support said claim, including his work history with the City. Finally, De Leon pleaded that he was terminated from his position as a result of his disability. Accordingly, we conclude that De Leon did plead a prima facie case of employment discrimination. *See Donaldson*, 495 S.W.3d at 436 (setting out the requirements for pleading a prima facie case of disability discrimination). The City does not challenge De Leon's pleadings for his reasonable accommodation claim on appeal. *See id.* at 439. We overrule this subissue.

---

[2] The City also argues that De Leon's unsworn declaration attached to his response to the City's plea to the jurisdiction and joint motions for summary judgment constitute a sham affidavit and should be disregarded. However, the City failed to obtain a ruling on its sham affidavit claim. Accordingly, that issue has not been preserved for our review. *See Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 883 (Tex. App.—Dallas 2006, no pet.) ("Defects in form of an affidavit must be objected to, and the . . . failure to obtain a ruling on an objection to a defect in form waives the objection."); *Wolfe v. Devon Energy Prod. Co., LP*, 382 S.W.3d 434, 452–53 (Tex. App.—Waco 2012, pet. denied) (holding that an objection to an affidavit as a sham "is [an] objection complaining of a defect in form" that must be preserved for appellate review); *see also Escamilla v. Cadena*, No. 13-22-00041-CV, 2023 WL 3015390, at *3–4 (Tex. App.—Corpus Christi–Edinburg Apr. 20, 2023, no pet.) (mem. op.).

14

### b. Was De Leon "disabled?"

The City next argues that the evidence shows that De Leon's "'disability' is 'stress and anxiety' that is exclusively caused by the personality of, and his relationship with, his supervisor," which "is not a qualifying disability under the ADA or TCHRA." In support of its argument, the City relies on *Chevron Corporation v. Redmon*, which held that under the TCHRA, a disability "must be one which is generally perceived as severely limiting him in performing work-related functions." 745 S.W.2d 314, 318 (Tex. 1987). However, *Redmon* did not review the current definition of "disability," but instead a prior version of the TCHRA's use and definition of "handicap." *See id.* (citing Acts of 1983, 68th Leg. 1st C.S., p. 37, ch. 7, §§ 1.01–10.01, 10.04, 10.05 (repealed 2003) (former Commission on Human Rights Act)). Thus, *Redmon* does not stand for the proposition that the City suggests and is inapplicable to the case at hand. *See id.* Rather, we look to whether De Leon had a mental or physical impairment that limited at least one major life activity, had a record of such impairment, or was regarded as having such an impairment. *See* TEX. LAB. CODE ANN. § 21.002(6) (defining "disability"); *id.* § 21.0021(a)(1) (commanding that "'disability' shall be construed in favor of broad coverage of individuals"); *id.* § 21.105 ("A provision in this subchapter or Subchapter B referring to discrimination because of disability or on the basis of disability applies only to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job."); *see also Leatherwood v. Houston Post Co.*, 59 F.3d 533, 536 (5th Cir. 1995) ("[T]he term 'because of disability' refers to discrimination because of or on the basis of a physical or mental condition that *does not impair* an individual's ability

15

to reasonably perform a job." (emphasis added)). Here, De Leon presented evidence in the form of his own testimony and reports from his physician and counselor that he suffered from hypertension, depression, and anxiety. *See* TEX. LAB. CODE ANN. § 21.002(6). Moreover, the same evidence demonstrates that De Leon's conditions effect his ability to sleep, think, and concentrate. *See id.* § 21.002(11-a) (defining "major life activity" to include sleeping, thinking, and concentrating). Thus, we conclude that De Leon presented sufficient evidence to create a genuine issue of material fact as to whether he was disabled. *See Clark*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 228.

The City also argues that De Leon's sole disability was "ONLY his inability to work directly, face to face, with his boss." However, that is merely the only way his disability manifested at work—as noted, a disability need not affect one's ability to work in order to be a disability. *See* TEX. LAB. CODE ANN. § 21.002(6); *see also id.* § 21.105. In support of its argument, the City cites to a series of federal cases that hold that an individual's stress and anxiety brought on by working with a coworker are not a disability under the ADA or, by extension, the TCHRA. *See Aldrup v. Caldera*, 274 F.3d 282, 287 (5th Cir. 2001) (holding that plaintiff's depression caused by working with specific employees "would merely tend to show that he was unable to perform any job at one specific location, and is not evidence of [his] general inability to perform a broad class of jobs"); *Kurth v. Gonzales*, 472 F. Supp. 2d 874, 880–81 (E.D. Tex. 2007) (holding that plaintiff's evidence that he could not work with a particular person was "insufficient to raise a genuine issue of material fact on whether he suffers from an impairment that substantially limits a major life activity of working"); *see also Adetimehin v. Healix Infusion Therapy, Inc.*, No. 4:14-

16

CV-334, 2015 WL 1537280, at *5 (S.D. Tex. Apr. 6, 2015) ("The inability to perform a single, particular job does not constitute a substantial limitation to the major life activity of working. . . . Even extreme stress caused by the circumstances of a particular job—while understandably very disturbing to an employee—is not a qualifying 'disability' for the purposes of the ADA."); *Mason v. Potter*, No. CIV.A H-08-3198, 2010 WL 4791497, at *8 (S.D. Tex. Nov. 15, 2010) ("The gravamen of [plaintiff's] complaint is that she was unable to work under the supervision of one particular supervisor. Such a claim does not substantially limit a major life activity and, therefore, is not a physical or mental impairment as defined under the ADA or the Rehabilitation Act."). However, each of the cases relied on by the City review only the "major life activity" of working, not of sleeping, thinking, or concentrating. *See* TEX. LAB. CODE ANN. § 21.002(6), (11). Accordingly, we find these cases to be inapposite. We overrule this subissue.

### c.    Was De Leon qualified?

The City next argues that De Leon was not qualified for his position "because he could not perform the essential functions of his job with or without 'accommodations.'" The City's sole basis for this argument relies on the letter from De Leon's counselor, wherein she opined "that a return to the condition that caused the initial psychological disorders will retrigger and would jeopardize his health and over all wellbeing," and she recommended that De Leon not return to work until she deemed him capable of doing so. However, this ignores the remaining portion of Ramos's letter: "If [De Leon's] return to work is absolutely necessary, please make all necessary efforts to accommodate [him] so as to not worsen his current conditions." Moreover, De Leon sent a letter that same

17

day asking for accommodations to "avoid further aggravation of [his] symptoms and help [him] continue performing [his] job duties without any issues." Construing this evidence in a light most favorable to De Leon, we conclude that this creates a genuine issue of material fact as to whether De Leon was qualified for his position and able to return to work. *See Clark*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 228; *Donaldson*, 495 S.W.3d at 437. We overrule this subissue.

### d. Did De Leon request reasonable accommodations?

Next, the City argues that De Leon did not and could not establish jurisdictional facts "that he was qualified for the job[ ]as his requests for accommodations were entirely unreasonable and would not have enabled him to perform the essential functions of" his job. This argument overlaps with the City's argument that he was not qualified for his position as well as its arguments that his requested accommodations would have placed an undue burden on the City. *See* TEX. LAB. CODE ANN. § 21.128(a), (b) (creating an affirmative defense to a reasonable accommodation claim if the requested accommodation "would impose an undue hardship on the operation of the business of the respondent").

De Leon's May 9, 2018 letter suggested three possible accommodations: (1) that all communications between he and his supervisor be limited to email or other written correspondence; (2) that De Leon be appointed a different supervisor or otherwise report to another person; or (3) De Leon be permitted to take additional sick leave to continue counseling and treatment.[3] The City argues and presented evidence that De Leon's

---

[3] De Leon's letter suggested that he had unused sick leave available to him, which the City does

18

requests were unreasonable because his position necessarily required that he be able to communicate with his supervisor orally during emergencies and that no other person could supervise De Leon because he was second-in-command while his supervisor was first. Moreover, the City argued that to the extent De Leon's request required the City to terminate his supervisor and hire a new one, it was unreasonable.[4]

The City relies on *Gonzalez v. United Parcel Service, Inc.*, which held that the plaintiff's request for accommodation—to be moved to a parttime position where no such position existed—was unreasonable as a matter of law, meaning that the employer "had no duty to engage in the interactive process." No. 5:15-CV-986-RCL, 2018 WL 4699274, at *14 (W.D. Tex. Sept. 28, 2018). In *Gonzalez*, the court noted that an employer's "'dereliction cannot be said to have *led* to a failure to reasonably accommodate' an employee where 'there is no evidence that a reasonable accommodation was feasible.'" *Id.* (quoting *Silva v. City of Hidalgo*, 575 Fed. Appx. 419, 424 (5th Cir. 2014)). In affirming *Gonzalez*, the Fifth Circuit noted that the employer did engage in the interactive process, but concluded that "[n]o accommodations could ameliorate [Gonzalez's] cognitive disabilities, and his proposal to redress his physical disabilities was not a reasonable accommodation, but the creation of a new position altogether." *Gonzalez v. United Parcel Serv.*, 777 Fed. Appx. 735, 739 (5th Cir. 2019).

---

not dispute.

[4] De Leon's response to the City's plea to the jurisdiction and attendant unsworn declaration suggested additional possible accommodations: (1) De Leon be permitted to take short work breaks when his anxiety and hypertension increase; (2) De Leon be excused from work for counseling sessions; (3) the City "counsel [De Leon's] supervisor to not bully or harass"; and (4) De Leon be permitted to employ relaxation techniques at work.

19

We find *Gonzalez* and *Silva* distinguishable. In both cases, the plaintiff-employees were unable to return to their positions at all. In *Gonzalez*, Gonzalez was unable to work more than four hours at a time even with additional accommodations, prompting his request for a new, parttime position to be created. *Id.* at 738. However, as a matter of law, that is not a reasonable accommodation. *See id.* (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315–16 (5th Cir. 2007) ("The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform.")); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have.")). In *Silva*, the employee was entirely unable to return to work at all, even after exhausting FMLA leave, and requested additional unpaid leave for up to three months, or in the alternative, "to be placed on light duty or desk duty," which did not exist. *Silva*, 575 Fed. Appx. at 423 ("Silva could not (or simply did not) provide an estimate of when she could resume her former job duties except to say that it would be longer than one month in the most optimistic scenario."); *see Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir.1996) ("Reasonable accommodation does not require an employer to wait indefinitely for the employee's medical conditions to be corrected." (cleaned up)). Although De Leon did ask for additional leave, he also requested specific accommodations to enable him to return to his position at the end of the leave, making this case distinguishable.

We find the language in *Dillard v. City of Austin, Texas* to be persuasive. *See* 837

20

F.3d 557, 562–63 (5th Cir. 2016). In *Dillard*, the Fifth Circuit held that "the interactive process is a two-way street; it requires that employer and employee work together, in good faith, to ascertain a reasonable accommodation." *Id.* at 563. "This should be an ongoing, reciprocal process, not one that ends with 'the first attempt at accommodation,' but one that 'continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed.'" *Id.* at 562 (quoting *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001)). However, no reciprocal process happened here: the City ended the process at the first attempt at accommodation without engaging in the process at all. *See id.* If we were to accept the City's position, an employee would be required to provide a reasonable accommodation on their first request with no responsibility on the employer to engage in a dialogue. Such a requirement would completely eliminate the efficacy of the interactive process, rendering it meaningless. Thus, although De Leon's first request may have placed an undue burden on the City, by failing to engage in the process at all, it cannot rely on the defense of undue burden. *See* Tex. Lab. Code Ann. § 21.128(c) (requiring an employer demonstrate "good faith efforts . . . to identify and make a reasonable workplace accommodation that would provide the individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business"); *Chevron Phillips Chem.*, 570 F.3d at 621. We overrule this subissue.

### e. Did the City have nondiscriminatory reasons for termination?

Finally, the City argues it had a nondiscriminatory reason for terminating De Leon: he was unable to return to work. However, this is the same argument the City relies on

21

for its claim that De Leon was not qualified for his position. Having already resolved that claim by noting that De Leon requested accommodations to allow him to return to work, we overrule this subissue.

### f. Conclusion

Having considered and overruled each of the City's subissues as it relates to De Leon's disability discrimination claim, we overrule the City's first issue.

### 2. Retaliation

The City also challenges the trial court's ruling denying its plea to the jurisdiction and combined traditional and no-evidence motions for summary judgment on De Leon's TCHRA retaliation claim. Specifically, the City argues that De Leon's pleaded claim relates solely to its decision to deny his appeal to his termination, which does not constitute a material adverse employment action that would support a retaliation claim. *See Univ. of Tex. at El Paso v. Esparza*, 510 S.W.3d 147, 160 (Tex. App.—El Paso 2016, no pet.) ("Denial of a post-termination internal grievance proceeding does not constitute an 'adverse employment action' unless the post-termination conduct has some tangible adverse effect on the terms and conditions of the plaintiff's current or prospective employment." (citing *Cantu v. Hidalgo County*, 398 S.W.3d 824, 829 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied)). De Leon responds by arguing that the City's position relies on "a superseded pleading" because he has since amended his petition. Thus, De Leon claims for the first time on appeal that the protected act was requesting accommodations and that the adverse employment action was his termination.

However, even accepting De Leon's position that we should consider his since-

22

amended pleadings, they do not include such a claim. De Leon's third amended petition and response to the City's plea to the jurisdiction cited his report of discrimination to the TWC after his termination and the City's denial of his appeal to his termination as the basis of his discrimination claim. So, too, does his fifth amended petition. As it relates to his TCHRA retaliation claim, De Leon's fifth amended petition states:

> [De Leon] brings claims for disability discrimination, failure-to-accommodate, harassment based upon disability, retaliation for engaging in a protected activity (refusal to rehire or reinstate) and all statutory damages allowed by law.
>
> . . . .
>
> [De Leon] was retaliated against by [the City] after filing his June 4, 2018, [c]harge of [d]iscrimination, and suffered an adverse employment decision, termination of employment in May 201, and denial of his appeal on June 12, 2018 (refusal to rehire or reinstate).
>
> . . . .
>
> [De Leon] appealed his termination of employment by May 10, 2018, letter. On or about June 4, 2018, [De Leon] filed his [c]harge of [d]iscrimination with TWC[], alleging disability discrimination. On or about June 12, 2018, [the City] was provided with a copy of the [c]harge and an invitation to participate in mediation. On that same day of receipt of the [c]harge, [the City] denied the appeal. Such conduct in denying the appeal (refusing to rehire or reinstate) was discriminatory, retaliatory, and punitive.

De Leon's fifth amended petition does not mention that his TCHRA retaliation claim rests on his requests for accommodations and the City's subsequent decision to terminate him. Accordingly, we address the City's argument that his pleaded claim does not support a waiver of immunity.

The City does not contend that De Leon's report of disability discrimination was not a protected activity, *see* TEX. LAB. CODE ANN. § 21.055; rather, the City only argues that the complained-of adverse action did not have a tangible adverse effect such as to

23

constitute a material adverse employment action. We agree. In *Cantu*, we considered whether Hidalgo County's decision to terminate Cantu's post-termination appeal after his complaint of discrimination constituted an adverse employment action under the TCHRA. *See Cantu*, 398 S.W.3d at 829. There, we held that "to constitute an 'adverse employment action,' post-termination conduct must have a 'tangible adverse effect' on the terms and conditions of the plaintiff's current or prospective employment." *Id.* (quoting *Waters v. Home Depot U.S.A., Inc.*, 159 Fed. Appx. 943, 944 (11th Cir. 2005)). We conclude that the City's denial of De Leon's appeal did not have a tangible adverse effect on the terms and conditions of his employment because the denial did not alter his employment status at all. *See Esparza*, 510 S.W.3d at 160; *Cantu*, 398 S.W.3d at 829. Accordingly, we sustain the City's second issue.

Having sustained the City's issue, we must next consider whether we must render a judgment dismissing the claim or remand the matter and allow De Leon an opportunity to replead his claim. *See Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022) ("[S]o long as petitioners' pleading does not affirmatively demonstrate the absence of jurisdiction, they should be given an opportunity to amend."). However, where a party's pleadings affirmatively negate jurisdiction, the appropriate remedy is to render a judgment dismissing the claim. *See State v. Lueck*, 290 S.W.3d 876, 885–56 (Tex. 2009). "Generally, remand is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538,

24

559 (Tex. 2016). "Once the defendant's jurisdictional plea gives notice of the jurisdictional defect, however, and the plaintiff responds with an amended pleading that 'still does not allege facts that would constitute a waiver of immunity,' then the trial court should order the case dismissed with prejudice." *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 101 (Tex. 2023) (quoting *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004)).

Here, the City's plea to the jurisdiction alerted De Leon to the jurisdictional defects in his pleadings. Although De Leon did not initially accept the opportunity to replead, he did so after the trial court denied the plea the jurisdiction. *See Fraley*, 664 S.W.3d at 101. However, De Leon's amended pleading relies on the same claim that the City challenged, which affirmatively negates jurisdiction. *See Dohlen*, 643 S.W.3d at 397; *Esparza*, 510 S.W.3d at 160. Instead, for the first time on appeal, De Leon urges an entirely new theory of liability to support his TCHRA retaliation claim. Thus, permitting him to amend would allow him to plead a new claim over which the trial court has jurisdiction. *See Marquez*, 487 S.W.3d at 559. Accordingly, we must render an order dismissing De Leon's TCHRA retaliation claim with prejudice as his pleadings affirmatively negated the trial court's jurisdiction. *See Fraley*, 664 S.W.3d at 101; *Dohlen*, 643 S.W.3d at 397; *Marquez*, 487 S.W.3d at 559.

## IV. WHISTLEBLOWER CLAIM

### A. Applicable Law

The Act provides that a governmental entity may not take adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement

25

authority." TEX. GOV'T CODE ANN. § 554.002(a). A public employee who alleges a violation of the Act "may sue the employing state or local governmental entity" as "[s]overeign immunity is waived and abolished to the extent of liability for the relief" allowed under the Act. *Id.* § 554.0035.

To establish a claim under the Act, an employee must show that he (1) reported (2) a violation of law by the employer or another employee (3) to an appropriate law enforcement authority, (4) that the report was made in good faith, and (5) that the adverse action would not have occurred if the employee had not reported the illegal conduct. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022). The Act waives immunity only for viable claims. *See id.* Thus "the elements of [a claim under the Act] can be considered as jurisdictional facts, when it is necessary to resolve whether a plaintiff has alleged a violation under the Act." *Lueck*, 290 S.W.3d at 881.

"[T]o properly 'report' under the Act, a public employee must convey information that exposes or corroborates a violation of law or otherwise provide relevant, additional information that will help identify or investigate illegal conduct"; "[c]ommunicating unsupported opinions or legal conclusions is insufficient." *Pridgen*, 653 S.W.3d at 184.

"[T]he 'good faith' limitation modifies all the Act's components, including the report requirement." *Id.* at 184 n.5 (citing TEX. GOV'T CODE ANN. § 554.002(a)). The good faith requirement has both "subjective and objective components." *Id.* (citing *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). To properly report a "violation of law," an employee must personally believe the conduct reported was a violation of law, and the employee's belief must have been reasonable in light of his training and experience. *Hart*,

26

917 S.W.2d at 784. "[A]n employee 'reports' 'in good faith' when (1) the employee believes the reported information will facilitate identifying or investigating a violation of law by the employing governmental entity or another public employee, and (2) the employee's belief is reasonable in light of the employee's training and experience." *Pridgen*, 653 S.W.3d at 184 n.5 (citing *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002)).

To show that the reporting party was terminated because of his report, they must "demonstrate that the person who took the adverse employment action—the decision-maker—knew of her report of illegal conduct." *Whitney v. El Paso Indep. Sch. Dist.*, 545 S.W.3d 150, 159 (Tex. App.—El Paso 2017, no pet.) (first citing *Alief Indep. Sch. Dist. v. Perry*, 440 S.W.3d 228, 238 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); and then citing *Harris County. v. Vernagallo*, 181 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). However, if a reporting party was terminated or suspended from employment "not later than the 90th day after the date on which the employee reports a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report." TEX. GOV'T CODE ANN. § 554.004(a). "Once sufficient evidence is produced to support a finding of the non-existence of the causal connection between the termination or suspension and the reported violation of law, the case proceeds as if no presumption had ever existed." *Whitney*, 545 S.W.3d at 159–60; *City of Houston v. Levingston*, 221 S.W.3d 204, 226 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Tex. Nat. Res. Conservation Comm'n v. McDill*, 914 S.W.2d 718, 723 (Tex. App.—Austin 1996, no writ).

**B.      Analysis**

The City challenges De Leon's Whistleblower claim on three bases: (1) De Leon did not make a report in good faith; (2) De Leon "cannot provide evidence creating jurisdictional facts showing that the City had any knowledge of his alleged report and took action against him based on them"; and (3) the City had a nonretaliatory reason for terminating De Leon.

As part of its argument that De Leon did not make a report in good faith, the City argues that De Leon simply made an inquiry, not a report, and that it was not done in good faith because it was based on hearsay obtained while he was on leave. De Leon, in response, argues that the evidence shows he did make a report, not merely an inquiry, but that an inquiry could constitute a report. Moreover, De Leon argues that a report may be based on hearsay evidence and the violation of law does not need to be personally observed to be in good faith. We agree with De Leon.

In his deposition, which was produced in response to the City's plea to the jurisdiction, De Leon testified that he met with TCEQ officials "[t]o report the illegal activities that [were] going on," specifically, a wastewater spill that was either underreported or not reported at all. *See* 30 TEX. ADMIN. CODE § 319.302(b) (2023) (Tex. Comm'n on Env't Quality, Notification Requirements) (requiring wastewater facilities to disclose certain wastewater spills). The City focuses its arguments on emails that De Leon sent to TCEQ without mention of De Leon's deposition testimony. Regardless, we disagree that the emails constitute mere inquiries. On February 22, 2018, De Leon sent an email to a TCEQ employee that stated, "This email is to inform you that a major

28

wastewater spill[] happened at Pharr Wastewater Plant on February 11th, at 2:20 p.m[.] and operations is worried that it might not have been properly or not reported to your office." On April 11, 2018, De Leon sent a follow-up email, inquiring into the status of his report, to which the TCEQ employee responded, notifying De Leon that "[t]he region is conducting an investigation into [his] complaint." We conclude De Leon's emails were sufficient to constitute a report under the Act. *See Pridgen*, 653 S.W.3d at 184; *Tex. Dep't of Assistive & Rehab. Servs. v. Howard*, 182 S.W.3d 393, 401 (Tex. App.—Austin 2005, pet. denied) ("[T]he Act only requires a disclosure of information by a public employee tending to directly or circumstantially show a violation by a public employer.").

As to the "good faith" component of De Leon's report, the City argues without support that De Leon's report could not have been in good faith because he was on leave under the FMLA at the time of the reports and "all the evidence submitted to TCEQ were documents and photos taken by other City employees." However, a report may be made in good faith, even if it is based on hearsay. *Tex. Dep't of Crim. Just. v. McElyea*, 239 S.W.3d 842, 853 (Tex. App.—Austin 2007, pet. denied) ("While a report may not be based on rumor and innuendo, it is permissible for a whistleblower's knowledge about violations of law to be based on hearsay."); *see also Gray v. City of Galveston*, No. 14-12-00183-CV, 2013 WL 2247386, at *3 n.3 (Tex. App.—Houston [14th Dist.] May 21, 2013, no pet.) (mem. op.) (same). Accordingly, we reject the City's argument that De Leon did not make a good faith report.

The City also argues that De Leon "has not and cannot provide evidence creating jurisdictional facts showing that the City had any knowledge of his alleged reports and

took action against him based on them. [De Leon] simply relies on the timing of his termination and the timing of his alleged reports months earlier." The termination in this place occurred within ninety days of De Leon's report, which supports the statutory presumption that the termination was because De Leon made the report. TEX. GOV'T CODE ANN. § 554.004(a). Thus, the City was required to produce sufficient evidence to rebut the causal connection between the report and termination but failed to do so. *See Whitney*, 545 S.W.3d at 159–60. Rather, the City only argues that De Leon did not produce evidence that the person who made the decision to terminate De Leon was aware that he made a report. But because De Leon was entitled to the presumption of causation, the City's argument is unavailing.[5] *See* TEX. GOV'T CODE ANN. § 554.004(a); *Whitney*, 545 S.W.3d at 159–60. Accordingly, we conclude that the presumption was sufficient for De Leon's Whistleblower claim to survive the City's plea to the jurisdiction.

Lastly, the City argues that it had a nonretaliatory reason to terminate De Leon, which is an affirmative defense. *See* TEX. GOV'T CODE ANN. § 554.004(b). Specifically, the City argues that it terminated De Leon "because he was unable to return to work after exhaustion of his medical leave." However, we rejected the same argument for the City's challenge to De Leon's discrimination claim. We similarly reject it here.

---

[5] In a single sentence with no supporting citations, the City also argues that De Leon "specifically plead[ed] he was terminated in relation to his issues with Villescas and the associated 'stress' from this, which necessarily affirmatively negates the 'but for' requirement of a whistleblower claim." Because the City offers no supporting analysis for this argument, we conclude the argument is waived as insufficiently briefed. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Moreover, such a conclusion would prohibit a plaintiff from pleading alternative theories of recovery. *See Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 467 (Tex. App.—Dallas 2006, pet. denied) ("A party may plead alternative theories of recovery, present the facts as it understands them to be, and recover under any one of their theories.").

Having considered and rejected each of the City's subissues, we overrule it's third issue.

## V.    CONCLUSION

We affirm the trial court's judgment as it relates to De Leon's disability discrimination and Whistleblower claim and reverse and render an order dismissing De Leon's TCHRA retaliation claim with prejudice.

CLARISSA SILVA
Justice

Delivered and filed on the
14th day of December, 2023.